**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
 kevin@kjclawgroup.com
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797

Attorneys for Plaintiffs
*Kunal Lekhadia, Neel Patel, and Gaurav Agrawal*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUNAL LEKHADIA, NEEL PATEL, and GAURAV AGRAWAL, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ŌURA HEALTH OY and OURARING INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>Filed Concurrently:</u><br><br>1. Plaintiffs' CLRA Venue Affidavits<br><br>***(Jury Trial Demanded)*** |

Plaintiffs Kunal Lekhadia, Neel Patel, and Gaurav Agrawal ("Plaintiffs"), each individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth in this Complaint, after a reasonable opportunity for discovery.

## **INTRODUCTION AND SUMMARY OF CLAIMS**

1. Plaintiffs bring this Class Action Complaint to challenge the automatic renewal subscription practices of Ōura Health Oy and Ouraring Inc. (collectively, "Ouraring").

2. In short, Ouraring's automatic renewal and continuous service offers violate California's Automatic Renewal Law (the "ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, which requires companies like Ouraring to clearly and conspicuously explain "automatic renewal offer terms," which Ouraring fails to do.

3. Additionally, Ouraring violated the ARL by failing to provide Plaintiffs and other consumers with a means to cancel their subscriptions (i) by using a "cost-effective, timely, and easy-to-use mechanism for cancellation," Cal. Bus. & Prof. Code § 17602(c), or (ii) "exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately." *Id.*, § 17602(d)(1).

4. As a result of these ARL violations, Ouraring has violated the California Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code §§ 1750, *et seq. See King v. Bumble Trading, Inc.*, 393 F.Supp.3d 856, 870 (N.D. Cal. 2019) (an ARL violation can form the basis for a CLRA claim); *see also Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676–77 (9th Cir. 2018) ("[Plaintiff's] complaint alleges that Pluralsight violated the ARL by charging him without first providing information on how to cancel the subscription. The record also indicates that consumers signing up for trial subscriptions were not specifically

given instructions on how to cancel before payment. This amply satisfies the UCL requirement that an unlawful business practice be any violation of 'other laws.'").

5. In addition, because Ouraring's automatic renewal "business practices" violate the ARL, they also violate California Business & Professions Code §§ 17200, *et seq.* (the "UCL"). *See, e.g., Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002) (explaining that the "unlawful" prong of § 17200 makes a violation of the underlying law a *per se* violation of the UCL; stating, "The UCL's scope is broad. By defining unfair competition to include any '*unlawful* . . . business act or practice,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable.") (emphasis in original); *see also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 561 (1998), *overruled on other grounds in Arias v. Superior Court*, 46 Cal.4th 969 (2009) (holding that § 17200 allows a remedy even if the underlying statute confers no private right of action). California law is clear that virtually any law or regulation—here, the ARL—can serve as a predicate for a § 17200 "unlawful" violation. *See People v. E.W.A.P., Inc.*, 106 Cal.App.3d 315, 319 (1980); *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383 (1992) (holding that § 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under § 17200).

## PARTIES

6. Plaintiff Kunal Lekhadia is and at all relevant times mentioned was both a resident of Ames, Iowa and a "consumer," as defined by Cal. Civ. Code § 1761(d) and Cal. Bus. & Prof. Code § 17601(d).

7. Plaintiff Neel Patel is and at all relevant times mentioned was both a resident of Walnut Creek, California and a "consumer," as defined by Cal. Civ. Code § 1761(d) and Cal. Bus. & Prof. Code § 17601(d).

8. Plaintiff Gaurav Agrawal is and at all relevant times mentioned was both a resident of San Francisco, California and a "consumer," as defined by Cal. Civ. Code § 1761(d) and Cal. Bus. & Prof. Code § 17601(d).

9. On information and belief, Defendant Ōura Health Oy is a Finnish company with its principal place of business at Elektroniikkatie 10, 90590, Oulu, Finland.

10. On information and belief, Defendant Ouraring Inc. is a Delaware corporation with its principal place of business at 222 Kearny Street, 7th Floor, San Francisco, California 94108.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a state within the United States and at least one defendant is the citizen or subject of a foreign state.

12. This Court has personal jurisdiction over Ouraring because (i) at least one of the Ouraring Defendants (Ouraring Inc.) has its principal place of business in this District (in San Francisco, California), (ii) Ouraring has sufficient minimum contacts in California, and (iii) Ouraring intentionally avails itself of the markets within California through its sale of subscriptions and products in California and to California consumers.

13. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1) because at least one of the Ouraring Defendants (Ouraring Inc.) has its principal place of business in this District (in San Francisco, California).

## FACTUAL ALLEGATIONS

14. Ouraring is a health technology company that develops wearable technology products, specifically smart rings that track various health metrics and sleep patterns. By all online accounts, Ouraring is valued at several billion dollars:

> **en.investclub.sv** 4w
> **Oura to Raise $875 Million at a $10.9 Billion Valuation**
>
> Oura ( @ouraring ) is a health technology company transforming wellness through its innovative wearable rings. The Oura Ring is an innovative device that monitors various health metrics, including sleep, activity, and heart rate, providing users with personalized insights. The company has seen significant growth in recent years, establishing itself as a key player in the growing market for smart health wearables.
>
> Oura ( @ouraring ) is reportedly raising $875 million in a new Series E funding round that would bring the company's valuation to $10.9 billion. The funds will be used to accelerate product development, expand global reach, and

15. Yet, Ouraring's success—or at least to some extent—is based on its knowingly trapping consumers into subscriptions they no longer want.

16. To that end, Plaintiffs each fell victim to unlawful subscription billing and cancellation practices by Ouraring.

17. Plaintiff Gaurav Agrawal purchased a 1-month prepaid membership from Ouraring on December 26, 2023 for $5.99. Unbeknownst to Plaintiff Agrawal, Ouraring automatically renewed the $5.99 per month charge, month after month.

18. Plaintiff Neel Patel purchased a 1-year prepaid membership from Ouraring on August 2, 2024 for $69.99. Unbeknownst to Plaintiff Patel, Ouraring automatically renewed the $69.99 per year charge, after the initial twelve month period.

19. Plaintiff Kunal Lekhadia purchased an Oura Ring on August 15, 2023. Upon receipt of the Oura Ring, Plaintiff Lekhadia was prompted to setup an account and enter payment information. Plaintiff Lekhadia was subsequently charge $6.41. Unbeknownst to Plaintiff Lekhadia, Oura Ring automatically renewed the $6.41 charge month after month.

20. When consumers purchase an Oura Ring, they have the option to purchase a "1-Year Prepaid Membership" for $69.99, as shown below:



21. Unbeknownst to consumers, however, Ouraring automatically renews the $69.99 membership charge year after year. Ouraring's membership charge is an automatic renewal subscription governed by the ARL. And among other requirements, the ARL requires companies like Ouraring to clearly and conspicuously (a term of art under the ARL) explain "automatic renewal offer terms," including the following clear and conspicuous disclosures:

a) That the subscription or purchasing agreement will continue until the consumer cancels.

b) The description of the cancellation policy that applies to the offer.

c) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

    d) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

    e) The minimum purchase obligation, if any.

*See* Cal. Bus. & Prof. Code § 17601(a)(2).

22. Critically, the ARL requires that the automatic renewal offer terms must be presented to the consumer both:

    a) *before* the purchasing contract is fulfilled, and in "visual proximity" to the *request for consent to the offer*; and

    b) *clearly and conspicuously*, defined by the statute as one or more of the following:

        i. in larger type than the surrounding text;

        ii. in contrasting type, font, or color to the surrounding text of the same size; or

        iii. set off from the surrounding text of the same size by symbols or other marks in a manner that clearly calls attention to the language.

*See id.*, §§ 17602(a)(1) & 17601(a)(3).

23. Simply, and as confirmed by screenshots gathered from Ouraring's website, Ouraring fails to provide the mandatory clear and conspicuous disclosures about its subscription terms in "visual proximity" to the "Place Order" prompt (i.e., the consent to the offer):



24. In fact, Ouraring deliberately obfuscates that the $69.99 membership charge will continue year after year, as evidenced by confusing and hidden language early in the shopping process:

**Add-Ons**

You can make your Oura experience even more convenient with a variety of add-ons. Your selections will be applied to all rings in your cart.

**1-Year Prepaid Membership**
Whether you're purchasing for yourself or as a gift, your order will include one year of membership. HSA/FSA eligible.

12 months prepaid — $69.99 ✓

*Prepaid membership begins after new member trial or any existing prepaid plan.*

**Upgrade your warranty with Extend**
Your purchase already includes 1 year of free coverage from Oura. Choose to enhance this coverage further with a 2 or 3-year warranty option from Extend.

2-Year Extend Protection — $45
3-Year Extend Protection — $60

Add to Cart

25. At the same time, Ouraring fails to provide a means for consumers to cancel their subscriptions (i) by using a "cost-effective, timely, and easy-to-use mechanism for cancellation," Cal. Bus. & Prof. Code § 17602(c), or (ii) "exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately." *Id.*, § 17602(d)(1). The ARL further mandates that Ouraring **shall** "provide a method of termination that is online in the form of either of the following:

  a) A prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings.

  b) By an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information."

26. Ouraring does neither.

27. Each Plaintiff Agrawal, Patel, and Lekhadia experienced difficulty in cancelling the recurring charges and has been unable to cancel those recurring charges.

28. Finally, the ARL requires Ouraring to send a retainable acknowledgement (*e.g.*, email) explaining or providing (i) the automatic renewal offer's terms, (ii) the cancellation policy, and (iii) information about how to cancel Ouraring's services. *See* Cal. Bus. & Prof. Code § 17602(a)(3). Yet, Ouraring also fails to do this.

29. Plaintiffs suspect that Ouraring knowingly violates the ARL, but that it doesn't care because doing so is so profitable. For example, there are numerous complaints about Ouraring's subscription and cancellation processes and poor customer service on the BBB's website, so much so that the BBB has identified a "pattern of complaints:"



**⚠ Alert Details**

This business has 1 alert.

Pattern of Complaints

**Pattern of Complaints**

Oura Ring came to BBB's attention in December 2021. A review of complaints was completed in September 2025. Complainants report product quality issues that include rapid battery depletion, and issues charging and syncing. Complaints also state customer service being unresponsive and refunds being delayed or not received.

BBB has reached out to Oura Ring to address the above issues. To date, we have not received a response.

**👤 Initial Complaint**            **Type:** 🛒 Product Issues
Date: 04/23/2025                    **Status:** ✂ Unanswered

I purchased an Oura Ring via ****** and created an account on March 22, 2024. On April 3, 2024 I cancelled the account membership on the **** Membership Website as I did not find the product useful for me. The account included a TRIAL MEMBERSHIP FOR FREE for one month otherwise a $75 yearly membership. As I was cancelling well before the one month date I was assured that I would not be charged for the membership that I was not going to be using. I returned the ring and I had everything cancelled on the membership platform. On April 23 I received an invoice for $75 and my credit card was charged. The invoice number for that charge is US25_INV01129034, reference number A03632160, stating I had an 8 days complaint time. My account shows that my membership was valid March 22-April 22, so I should not have been charged. I have attempted to dispute this charge with Oura directly, but there is no way to speak to a person, only an AI Chat Bot that just keeps directing me to "Check membership status on Membership Hub". There is no way to speak to a human in order to facilitate help.

> **Initial Complaint**  Type: Service or Repair Issues
> Date: 07/21/2025  Status: Unanswered
>
> I need to **cancel** my daughters Oura ring subscription which is being billed to my credit card. I/we tried to do it via your website, the app and I even messaged one of your employees via ********, but there seems to be no way to get in direct contact with your customer care department. It is very important NOT to **cancel** my wife's subscription, but only my daughters. She hasnt used the ring or service for probably almost a year now.

## CLASS ACTION ALLEGATIONS

30. Plaintiffs bring this action on behalf of themselves and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class.

31. Plaintiffs represent, and each are members of, the Class consisting of:

> **All persons in the United States who purchased a product or service from Ouraring as part of an automatic renewal plan or continuous service offer within the four years prior to the filing of this Complaint.**

32. Excluded from the Class are any and all past or present officers, directors, or employees of Ouraring, and any judge who presides over this action. Plaintiffs reserve the right to expand, limit, modify, or amend these class definitions, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon changing circumstances and/or new facts obtained during discovery.

33. There is a well-defined community of interest in the litigation, the proposed class is easily ascertainable, and Plaintiffs are proper representatives of the Class.

34. *Numerosity*: The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate

discovery, but on information and belief, Plaintiffs allege that there are thousands of members of the Class. The precise number of Class members is unknown to Plaintiffs.

35. ***Typicality***. Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiffs are members of the Class they seek to represent. Identical to all members of the Class, Ouraring failed to provide a "cost-effective, timely, and easy-to-use mechanism for cancellation" whereby consumers can "terminate the automatic renewal or continuous service exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately."

36. ***Adequacy of Representation***. Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs have retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiffs and their counsel intend to prosecute this action vigorously. Plaintiffs have no antagonistic or adverse interests to those of the Class.

37. ***Existence and Predominance of Common Questions of Law or Fact***. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

(a) Do Ouraring's automatic renewal practices violate the ARL, Cal. Bus & Prof. Code §§ 17600, *et seq.*?
(b) Has Ouraring violated the CLRA, Cal. Civ. Code §§ 1750, *et seq.*?
(c) Has Ouraring violated the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*?
(d) Whether the members of the Class are entitled to damages and/or restitution.
(e) What type of injunctive relief is appropriate and necessary to enjoin Ouraring from continuing its unlawful automatic renewal practices?

38. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

39. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

40. **Ascertainability**. Upon information and belief, Defendant keeps extensive computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

**FIRST CAUSE OF ACTION**

**Violations of the California Consumers Legal Remedies Act (ARL),**

**Cal. Civ. Code §§ 1750, *et seq.***

**(By Plaintiffs Against Defendants on Behalf of the Class)**

41. Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph.

42. The CLRA is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

43. California enacted the ARL "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600.

44. Plaintiffs and each member of the Class are "consumers" as defined by California Business & Professions Code section 17601(d). Ouraring's sales of its products on its website to Plaintiffs and the Class were for an "automatic renewal" within the meaning of California Business & Professions Code section 17601(a).

45. Defendants failed to clearly and conspicuously disclose (a) the nature of the subscription agreement as one that will continue until the consumer canceled, (b) how to cancel the subscription, (c) the recurring amounts that would be charged to the consumer's payment account, (d) the length of the automatic renewal term, or (e) any minimum purchasing obligation(s).

46. Defendants failed to provide a "cost-effective, timely, and easy-to-use mechanism for cancellation" whereby consumers can "terminate the automatic renewal or continuous service exclusively online, at will, and without engaging any further steps that

obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately."

47. Through their violations of the ARL, Defendants have violated the CLRA. *See King*, 393 F.Supp.3d at 870 (an ARL violation can form the basis for a CLRA claim); *see also Pluralsight*, 728 F. App'x at 676–77 ("[Plaintiff's] complaint alleges that Pluralsight violated the ARL by charging him without first providing information on how to cancel the subscription. The record also indicates that consumers signing up for trial subscriptions were not specifically given instructions on how to cancel before payment. This amply satisfies the UCL requirement that an unlawful business practice be any violation of 'other laws.'").

48. Pursuant to Cal. Civ. Code § 1782, on September 22, 2025, Plaintiffs' counsel notified Defendants in writing (by certified mail, with return receipt requested) of the particular violations of the CLRA and demanded that they correct or agree to correct the actions described in this Complaint, including by giving notice to all affected consumers.

49. Defendants did not agree to rectify the problems associated with the actions described above and to give notice to all affected consumers within 30 days of the date of the written notice, as prescribed by § 1782.

50. Plaintiffs seek actual, consequential, punitive, and statutory damages, as well as mandatory attorneys' fees and costs, against Defendants.

## SECOND CAUSE OF ACTION

**Violations of the Unfair Competition Law (ARL) (Bus. & Prof. Code, §§ 17200, *et seq.*)**

**(By Plaintiffs Against Defendants on Behalf of the Class)**

51. Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph.

52. The UCL prohibits, and provides civil remedies for, "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice." The UCL is written in "sweeping language" to include "anything that can properly be called a

business practice and that at the same time is forbidden by law." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992) (internal brackets and quotation marks omitted).

53. The UCL has several substantive "prongs" which are a function of the statutory definition of "unfair competition." More specifically, under the UCL, "unfair competition" includes (i) an "unlawful" business act or practice, (ii) an "unfair" business act or practice, and (iii) a "fraudulent" business act or practice. *See* Bus. & Prof. Code, §§ 17200, *et seq.*

54. The "unlawful" prong of the UCL makes a violation of the underlying law a *per se* violation of the UCL. "By defining unfair competition to include any '*unlawful . . . business act or practice*,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable." *Kasky*, 27 Cal.4th at 950 (emphasis in original).

55. Defendants committed "unlawful," "unfair," and/or "fraudulent" business practices by, among other things: (a) enrolling Plaintiffs and the Class in an automatic renewal and continuous service subscription without providing clear and conspicuous disclosures as required by California law; (b) charging Plaintiffs and the Class for those services without obtaining the requisite affirmative consent; (c) failing to provide Plaintiffs or the Class with information on how to cancel those services; (d) failing to provide Plaintiffs or the Class with a cost-effective, timely, and easy-to-use mechanism for cancellation, nor a method of cancellation required by § 17602; and (e) failing to send an ARL-compliant retainable acknowledgement consistent with Cal. Bus. & Prof. Code § 17602(a)(3). Plaintiffs reserve the right to allege other violations of law that constitute unlawful, unfair, or fraudulent business acts or practices.

56. Defendants' acts and omissions as alleged in this Complaint violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

57. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described in this Complaint.

58. Defendants' acts, omissions, nondisclosures, and misleading statements as alleged in this Complaint were and are false, misleading, and/or likely to deceive the consuming public.

59. Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

60. Pursuant to § 17203, Plaintiffs and all Class members are entitled to restitution of all amounts Defendants received from them as a result of the foregoing conduct during the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair competition cease.

61. Pursuant to § 17203, Plaintiffs are entitled to an order enjoining Defendants from committing further acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment in favor of themselves and the Class as follows:

### On the First Cause of Action for Violations of the California Consumers Legal Remedies Act (ARL), Cal. Civ. Code §§ 1750, *et seq*.

A. For an order certifying that the action be maintained as a class action, that Plaintiffs be designated the class representatives, and that undersigned counsel be designated as class counsel.

B. For an injunction putting a stop to the illegal conduct described herein and ordering Defendants to correct their illegal conduct and (i) refrain from automatically charging consumers without properly informing them in the future, and (ii) implement an ARL-compliant cancellation method.

C. For an order awarding Plaintiffs and the proposed Class members actual, consequential, restitution, punitive, and statutory damages, as appropriate.

D. For pre- and post-judgment interest and costs of suit incurred herein.

E.  For attorneys' fees incurred herein.

F.  For such other and further relief as the Court may deem just and proper.

## On the Second Cause of Action for Violations of the Unfair Competition Law (ARL), Bus. & Prof. Code, §§ 17200, *et seq.*

A.  For an order certifying that the action be maintained as a class action, that Plaintiffs be designated the class representatives, and that undersigned counsel be designated as class counsel.

B.  For an injunction putting a stop to the illegal conduct described herein and ordering Defendants to correct their illegal conduct and (i) refrain from automatically charging consumers without properly informing them in the future, and (ii) implement an ARL-compliant cancellation method.

C.  For an order awarding Plaintiffs and the proposed Class members actual, consequential, restitution, punitive, and statutory damages, as appropriate.

D.  For pre- and post-judgment interest and costs of suit incurred herein.

E.  For attorneys' fees incurred herein.

F.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury on all counts so triable.

DATED:  December 26, 2025        **KJC LAW GROUP, A.P.C.**

By:  /s/ *Kevin J. Cole*
Kevin J. Cole, Esq.

Attorneys for Plaintiffs
*Kunal Lekhadia, Neel Patel, and Gaurav Agrawal*